# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
                                         :
 4    INFINITY HEADWEAR & APPAREL,       :
                                         :   15-CV-1259 (JPO)
 5                         Plaintiff,    :
                   v.                    :   500 Pearl Street
 6                                       :   New York, New York
      JAY FRANCO & SONS, et al.,         :
 7                                       :   May 11, 2015
                         Defendants.     :
 8    ------------------------------------X

 9

10         TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
                   BEFORE THE RONALD L. ELLIS
11             UNITED STATES MAGISTRATE JUDGE

12    APPEARANCES:

13

14    For the Plaintiff:       JAMES BURTON, ESQ.
                               Collen IP
15                             Highland Avenue
                               Ossining, New York 10562

16

17    For the Defendant:       EZRA SUTTON, ESQ.
                               Ezra Sutton Ezra Sutton, P.A.
18                             900 Route 9 North
                               Woodbridge, New Jersey 07095

19

20

21

22    Court Transcriber:       SHARI RIEMER, CET-805
                               TypeWrite Word Processing Service
23                             211 N. Milton Road
                               Saratoga Springs, New York 12866

24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

2

1         THE CLERK: We're on the matter for a status
2    conference, Infinity Headwear & Apparel v. Jay Franco & Sons,
3    et al., 15-CV-1259.
4         Counsel, please state your name for the record.
5         MR. BURTON:  Good morning, Your Honor.  James Burton
6    on behalf of the plaintiff.
7         THE COURT: Good morning.
8         MR. SUTTON:  Ezra Sutton on behalf of the Franco
9    defendants, Your Honor.  I was under the impression that Mr.
10   Golden from Allstar was going to be here.
11        THE COURT: I was under the same impression.  I was
12   going to ask you if either of you have heard from him.
13        MR. BURTON:  I know the court filed a notice of a
14   status conference in both cases.  I would assume that he would
15   have received it via ECF but I didn't confirm with him that he
16   was coming.
17        THE COURT: Well, it certainly didn't affect their
18   ability to write submissions.  So I know they were getting
19   some indications.
20        MR. SUTTON:  I did speak to him within the last week
21   and I was under the impression he was coming.
22        THE COURT: As I said less than a few minutes ago one
23   never knows what's going to happen on any particular morning.
24        MR. BURTON: So true.
25        THE COURT: So why don't -- Mr. Burton, why don't you

3

1  remain standing because I have a few questions for you.  There

2  are a number of issues but I wanted to begin with the

3  scheduling order that was executed on March 17th.

4          MR. BURTON: In the Franco matter?

5          THE COURT: Yes.  I wanted to know how you're doing

6  with respect to that.

7          MR. BURTON: Your Honor, the next -- the deadline

8  that was most imminent was our disclosure of accused products

9  and infringement contentions.  We had filed a letter motion

10 with the court asking that either the dates in the Franco and

11 Allstar matter be matched up or that that disclosure deadline

12 be postponed pending today's conference and that's what the

13 court had done was stay that deadline.  So that's -- the issue

14 I think is once that date is set that's kind of the trigger

15 date for the remainder of the claim construction deadlines.

16 That's one issue before the court today.

17          But otherwise parties have exchanged discovery.

18 We're working on discovery issues but that deadline I think is

19 the most imminent issue.

20          THE COURT: In that -- on that score, those -- your

21 disclosures, wouldn't that [inaudible] court in making the

22 determines that are being proposed including the stay and the

23 consolidation?

24          MR. BURTON: I think it probably would.  I think we

25 would concede that.  I think the issue is not so much those

4

1    disclosures.   Under the local patent rules that's not a

2    significant undertaking.   What the issue is is it's the

3    trigger date.

4              THE COURT: That's correct.

5              MR. BURTON: So that was our concern.   It's not the

6    preparation of the disclosures but the impact.   Forty-five

7    days later we have invalidity contentions are due and then

8    disclosure terms, et cetera under the local patent rules.   So

9    I think it would aid the court -- what I would say to that is

10   this patent is a very straightforward patent.   The technology

11   is simple.   The terms I think are relatively understandable

12   and I understand that the defendants have made various

13   arguments regarding the differences in --

14             THE COURT: Let me stop you for a moment because

15   since we have all of these balls being juggled --

16             MR. BURTON: Sure.

17             THE COURT:   -- the local patent rules like the local

18   rules and the federal rules all have this one phrase unless

19   otherwise ordered by the court.   Since what I want to have

20   happen is I want things to start moving.   If there's any need

21   to just take pressure off of you because of these -- the

22   subsequent deadlines I think everybody would be in a better

23   position to make their arguments because once we have at least

24   the first deadline in place because the defendants are making

25   arguments about first of all, whether or not the two cases are

5

1  similar and it seems to me that -- while you talk about it as

2  a triggering mechanism, it's informative.  It will inform the

3  defendant.  It will inform the court and you'll make arguments

4  based upon that.

5           So it seems to me that the first order of business

6  is to get that out of the way, let -- now, I understand

7  that -- I guess my technical point of view Allstar's clock

8  doesn't start running because they haven't had an initial

9  conference.

10          MR. BURTON: Right.  But I thought we --

11          THE COURT: But on the other hand you have control

12  over -- it doesn't say that you have to wait 45 days.

13          MR. BURTON: Right.

14          THE COURT: Since you just said that it's not a

15  particularly strong obstacle perhaps what we could do is we

16  could say why don't you do them both in 30 days from today.

17          MR. BURTON: Your Honor, we'd be willing to do them

18  two weeks from today.

19          THE COURT: Two weeks from today?

20          MR. BURTON: If the court -- we also have an interest

21  in moving things along.  It's not -- any action on our part is

22  not at all an attempt to delay the matter.  We're the

23  plaintiff.  We want to push it down the road as much as

24  anybody.  So we would be happy to do it two weeks from today

25  and I understand the court's point that it is informative and

6

1   the big issue for us is trying to keep these schedules matched

2   up particularly in the claim construction context and as the

3   court indicates if it -- if the understanding is that the

4   responses from both defendants would be due 45 days after

5   under the local patent rules we'll do them simultaneously.

6   We'd be happy to do it in two weeks.

7            THE COURT: In that regard, understanding -- we're

8   not talking about a consolidation and since the two cases

9   would be linked arm on arm, only that the discovery would be

10  moving together so that if there was a need for overlap in

11  terms of -- I don't know what kind of issues might come up.

12  The issues would come up together and then we could have a

13  situation where we'd have the benefit of all the parties

14  weighing in.

15           As I said, this is not a consolidation of the cases

16  but just to make sure that the discovery goes along because I

17  think it would benefit the court to have the issues come up

18  together and I'd have the benefit of both defendants weighing

19  in.  So if you can do that in two weeks and then what -- the

20  most -- I think the best thing for us to do is at that point

21  for me to give the defendants another week after they've

22  gotten that to see if they want to supplement anything they've

23  said in terms of consolidation with the recognition that I

24  don't see consolidation of discovery -- consolidation actually

25  might be a bad term.  Coordination might be a better phrase to

7

1  use.

2          MR. BURTON: And to further the point, Your Honor, I

3  think particularly in the claim construction context I highly

4  doubt the court is interested in doing claim construction

5  twice on this patent and I think we're certainly not and I

6  think -- I recognize the point made in the briefing that there

7  are discovery issues that will be different.  Mr. Sutton, I

8  have no desire to attend an Allstar deposition.  We understand

9  that but from our perspective and I think from the court's

10 perspective claim construction should happen once on this

11 patent.

12         THE COURT: Indeed.  Whether or not he wants to

13 attend the deposition the decision would be made easier if all

14 of the information is gotten at the same time.  You might make

15 a different determination.  You might want to hear what you're

16 going to ask them.

17         But in any case, two weeks and then --

18         MR. BURTON: Your Honor, two week is Memorial Day.

19 Can we -- can we either bump it --

20         THE COURT: That's fine.  Whatever the day after

21 Memorial Day is.  I see you're conversant with the calendar.

22 So let's see.  Memorial Day is -- so you're talking about May

23 25th -- May 27th.  You can get a day of rest after that.

24         MR. BURTON: I'll be having a baby no later than May

25 26 -- May 26th is the day that they said they'll take my

8

1  wife's baby.  So I appreciate it.

2       THE COURT: Then the defendants will have a week in

3  case they want to supplement anything that they've written on

4  the consolidation.  I understand that Allstar is making noises

5  about the stay.

6       MR. BURTON: Yes.

7       THE COURT: I haven't seen anything.  It just was

8  alluded to in the papers.

9       MR. BURTON: We've seen the same thing in the papers.

10 My understanding, Your Honor, and I certainly don't want to

11 advocate their position, is that they are preparing a request

12 for re-examination with the PTO.  It hasn't been filed, a

13 motion for stay hasn't been filed and from our perspective

14 they're not here.  They should be here.  I don't think it's an

15 issue to even raise today.

16      THE COURT: Well, I think it might be a little

17 premature since they haven't raised it but it's always good to

18 be apprised.  And in addition, with the approach that we're

19 taking I think any application for a stay would be better

20 informed as I see what kind of claims are going to be raised

21 or what contentions.

22      MR. BURTON: Agreed.

23      THE COURT: So that's what we're going to do with

24 respect to these global issues about consolidation.  As I

25 said, I don't like to use the term consolidation because when

9

1  I think of a case being consolidated I think of them as being

2  more united although we do have a number of cases in which we

3  try to coordinate discovery both for the court's efficiency

4  and for the party's efficiency.  So if you get in these --

5  your description of your contentions in accordance with the

6  local rule I think we'll be on schedule.

7         If the next step requires additional time perhaps

8  the parties might even agree to it but whatever the invalidity

9  contentions might be I think we'll try to not keep reinvesting

10  the wheel.

11         Mr. Sutton.

12         MR. SUTTON: Yes.  Your Honor, just a couple of

13  comments.  I understand that with regard to consolidation we

14  will get one week to -- with regard to the consolidation

15  motion that is pending we will get a week after we see

16  their --

17         THE COURT: Right.  In case that brings up other

18  issues so that you -- I don't want to have a defendant to say

19  well, if we would have known that's what he was going to say

20  it would -- we would have --

21         MR. SUTTON: I understand.  So that's reasonable,

22  Your Honor.  And my comment on a stay and I know it's -- I

23  understand it's premature but my comment is that I have spoken

24  to Mr. Golden who's representing Allstar and I am 99 percent

25  sure that they are going to file a request for re-examination

10

1  and as Your Honor knows that would mean -- that re-examination

2  process could take a minimum of a year to up two years in the

3  patent office with all the amendments and things like that and

4  the problem I'm having, and I just want the court to be aware

5  of this and that's why I'm bringing it up now, is that my

6  clients want me to try --

7           THE COURT: Resolve this as quickly as possible.

8           MR. SUTTON: Correct.

9           THE COURT: I understand the whole re-examination

10 process.  Without prejudging the issue it's probably -- I

11 would like this case probably to be resolved before the re-

12 examination would be finished.  So as I'm not prejudging but

13 at least my -- unless the patent office has changed since many

14 years ago when I did that kind of stuff I don't expect that

15 this is something that is going to be a swift process and

16 while some people complain about the judicial process the one

17 thing I know about the judicial process is I have some control

18 over that.

19           MR. SUTTON: Well, so my comment, my other comment on

20 that is if the re-examination is filed we, the Franco

21 defendants certainly don't want to be stayed, our case -- we

22 don't want to have our case stayed and be tied to that re-

23 examination process in the Allstar case.  I just wanted to

24 bring that to the court's attention.  So I was hoping -- we're

25 hoping that if the court considers a stay in -- with regard to

1   the Allstar case that it would not somehow -- it would not

2   somehow pull us into it -- our case being stayed.

3        THE COURT: Point taken although the -- as I said,

4   I'd probably have to be convinced that a stay is the best way

5   to go on either case.

6        MR. SUTTON: By the way, Your Honor, one more -- I

7   just want to make a further comment on the consolidation. I

8   realize it's premature because we're going to have some time

9   to put in some other submissions but while I was sitting here

10  this morning I was re-reading my brief in opposition on

11  consolidation and I wrote a list of nine different reasons why

12  the cases are different under 299. I mean starting with the

13  structures, the infringing structures are different. You've

14  got different defendants. Defendants are competitors, they're

15  both selling similar products. The defenses of re-examination

16  and motion for summary judgment are different. There's a stay

17  question. Then you have --

18       THE COURT: Your point is taken.

19       MR. SUTTON: Okay. Thank you, Your Honor.

20       THE COURT: Now, let me get back to the issue that

21  was raised only in the Jay Franco case concerning the third

22  party subpoenas. I mentioned this at our conference before

23  and that is the issue of standing. Let's start with the good

24  news and that is that apparently you have agreed that the

25  defendants will be able to get -- provide information on Nos.

1  1 and 6.

2          MR. BURTON: I think, Your Honor, the agreement to be

3  clear is that we will evaluate what the defendants provide on

4  1 and 6.  They represented that they can do that.  We

5  certainly don't want to foreclose the option if they can't

6  provide what they say can provide to not seek it otherwise.

7  That was our -- that's our intent.

8          THE COURT: Well, let me -- two things.  One, on the

9  issue of standing as the parties are aware, Rule 45 basically

10 says that if you start with a subpoena you can file

11 objections.  There is case law and there are even cases in

12 which I have granted a party the ability to challenge

13 subpoenas that have been given out to third parties.

14          Based upon the record before me in this case I don't

15 see that it's been established that there's a sufficient basis

16 for the parties to challenge the third party subpoenas but

17 also I want to point out that some of the subpoenas seem to me

18 to request information that does not address the questions of

19 potential damages and so, for example, while Request 2 and 4

20 arguably could on their face seem to be concerned with issues

21 that might provide information on damages I have serious

22 questions about Requests 3 and 5.  I say that because since I

23 mentioned the standing if you do file third party subpoenas

24 and you're not able to demonstrate that these are going to be

25 relevant it could create issues as we move forward.

13

1          So I think forewarned is forearmed.  So I know that

2  defendants don't want you going to these third parties but I

3  also don't want people filing discovery that I wouldn't even

4  allow against the party.  So you're certainly free to work on

5  the -- whatever you can agree on at this point but for now

6  we're going to play this Rule 45 straight and that is that if

7  you -- if there are parties who receive subpoenas they can

8  object to the subpoenas.  That may mean that there won't be

9  anything that's done until we resolve the relevance issues

10  which means that -- I don't know if any substantive things

11  would be garnished from the third parties if they raise

12  objections.

13          MR. BURTON: So just to make sure I understand that

14  when we act in compliance with the court's instructions we're

15  free to serve the subpoenas.  Obviously we need to be careful

16  what we ask for and then we'll address it down the road if the

17  parties that are subpoenaed found objections if I understand

18  that correctly.

19          THE COURT: I prefer to say -- rather than saying

20  you're free to serve subpoenas, I see no reason for prior

21  restraint.

22          MR. BURTON: Understood.

23          MR. SUTTON: Your Honor --

24          THE COURT: Yes, Mr. Sutton.

25          MR. SUTTON: With regard to the subpoenas, there is

14

1    one side issue that is important here and that has to do --

2    well, I'm sorry, two.  One is very quick.  It asks for past

3    and present Franco products.  Now, I'm reading that as Franco

4    has been in business for let's say 10 or 20 years and they're

5    asking for information about -- in No. 3, Your Honor, a

6    complete product list including SKUs, model names, model

7    numbers for past and present Franco products.  I hope that

8    that does not mean that it relates products other than the one

9    that's the accused product.

10           MR. BURTON: Your Honor, to address it quickly.

11   Franco products is a defined term within the scope of the

12   subpoena and it's defined as their accused product, same

13   accused product we identified in the Utah matter before it was

14   transferred here.  So it's limited to the accused product.

15           MR. SUTTON: That's good.  And the second issue on

16   the subpoena, Your Honor, is the subpoena asks for sales

17   information in No. 2.  Sales -- gross sales information for

18   the sales of Franco product from October 4, 2014 to the

19   present.  Now, we had brought up that there's an issue here.

20           THE COURT: December 2014 should be the date is what

21   you're saying?

22           MR. SUTTON: Yes.

23           THE COURT: You've seen the argument.  You want to

24   change -- I mean you're going to submit -- if you submit

25   subpoenas that have improper dates, first of all I don't know

15

 1   if anybody is going to comply with them but you've heard the

 2   argument.  What is your response to it?

 3        MR. BURTON: I think the issue if I understand his

 4   argument correctly is a marketing issue, whether the patents

 5   or the products were properly marked, our products, and I

 6   haven't had the chance to confirm with my client.  We

 7   understand the law on the issue.  I'm sure the subpoenas, the

 8   scope will be in compliance with the law.

 9        THE COURT: Well, I can only say this.  To the extent

10   that you've been forewarned I don't want any subpoenas to go

11   out that raise an issue that you're going to lose on because

12   that would look bad.

13        MR. BURTON: I understand.  We don't want to look

14   bad, Your Honor.

15        THE COURT: We have a new addition here?

16        MR. GOLDEN:  Yes.  I apologize for my tardiness,

17   Your Honor.  Robert Golden on behalf of defendant Allstar

18   Marketing.

19        THE COURT: Do you have an excuse for your tardiness?

20        MR. GOLDEN: Just I was under the impression that the

21   conference was scheduled for eleven, Your Honor.

22        THE COURT: Well, it's not a good excuse but --

23        MR. GOLDEN: It's the honest excuse, Your Honor.  I

24   apologize.

25        THE COURT: We'll give you opints for honesty

16

1    although you'll have to ask your colleagues what transpired in

2    your absence.

3                 MR. GOLDEN: Very well.

4                 THE COURT: Is there anything else?

5                 MR. BURTON: Your Honor, I have a couple of just

6    housekeeping items.  In the Allstar case we filed a motion for

7    a protective, for entry of a protective order on April 16th.

8    It's not been opposed and we ask that the court enter -- the

9    protective order is the same protective order in the Franco

10   case.

11                THE COURT: Did you have -- is that the one you're

12   supposed to put -- whose name do you have on that?  I think

13   you had the prior judge in the Allstar case.

14                MR. BURTON: I can tell you, Your Honor, if you'll

15   wait just one second.

16                THE COURT: If you want me to sign it at least change

17   the signature page so I won't feel slighted.

18                MR. GOLDEN: It has the same protection that Mr.

19   Sutton saw with respect to non subpoenas we have no objection

20   to the protective order.

21                MR. BURTON: It has -- actually Your Honor's question

22   it has Judge Woods' name on it but I think I'll do what we did

23   before.  Email it to you and with the right name on it.

24                THE COURT: Okay.  Submit one that has the right name

25   on it.  I know it seems like small things but you don't want

1  to have wrong names on orders because when somebody goes and

2  looks -- well, first of all, some of the judge's signatures

3  you won't be able to tell whose signature it is and the only

4  thing that will be there is the name.  So do that.  I note

5  without objection you submit it, I'll sign that.

6           Anything else?

7           MR. BURTON: The second issue is, Your Honor, we have

8  yet to have a scheduling conference in the Allstar matter.

9  Both parties have submitted prospective schedules.  Our

10  schedule from the plaintiffs is identical in timing and in

11  format to the Franco matter.  We would ask that the court

12  enter that scheduling order so the cases -- while I understand

13  the court's position on consolidation or coordination as the

14  court used --

15           THE COURT: So the scheduling order is based on

16  trigger dates.

17           MR. BURTON: Right.

18           THE COURT: So it should -- and once we get the right

19  trigger dates everything should fall into place.

20           MR. BURTON: To be clear, the defendants also have a

21  different schedule.  We would ask that the court -- or propose

22  a different schedule.  We would ask the court keep the

23  schedules in the two cases the same to match up the dates,

24  particularly the trigger dates.  I think the difference is is

25  our close of discovery we would like the benefit of a claim

1  construction order before discovery closes and I think that's

2  one big difference between our schedule and their schedule.

3         THE COURT: Well, submit to me and I will take that

4  into account.

5         MR. BURTON: And they've been submitted, Your Honor.

6         THE COURT: You mean it's on ECF?

7         MR. BURTON: Yes.  It's Docket Nos. -- it's Docket

8  No. 30 in the Allstar case and that includes the letter.  We

9  were in front of a different judge at that time.  So it has

10  the party's different positions on the issues and then the

11  parties two respective proposed schedule orders.

12         THE COURT: Okay.

13         MR. BURTON:  Thank you.

14         THE COURT: So does that also have somebody else's

15  name on it?

16         MR. BURTON: I would imagine that it does.  We can --

17         THE COURT: Let's do a little housekeeping so that --

18         MR. GOLDEN:  Your Honor, I apologize if this was

19  raised in my absence but we've notified opposing counsel and

20  we've notified the court that we're seeking re-examination of

21  the patent in suit.  That's going to be filed this week.  It's

22  re-examination at the patent office and as soon as that's

23  filed we're going to be seeking a stay of the litigation.  So

24  I've had discussions with opposing counsel and it was briefed

25  by letter to the court.  Whatever the schedule he's thinking

19

1  of as far as going forward whether it's consolidated with the

2  Jay Franco case or not we're going to be seeking a stay of the

3  entire thing.  It's by far the most efficient method for --

4          THE COURT: Counsel, I have the argument that you

5  raised in your papers.  The time for making arguments in

6  person has passed because I have another matter to take care

7  of.

8          MR. SUTTON: Your Honor, just a final question.  Just

9  so I'm a hundred percent clear on this.  Mr. Burton is going

10 to disclose his infringement contentions on May 27th but

11 that's for both cases; correct?

12         THE COURT: That's correct.  We have a conference

13 that's scheduled for May 18th.  We won't have that conference.

14 I don't want people showing up for conferences that we -- but

15 what we will do is after the dust settles from your submission

16 on the 27th and the submissions by the defendants then we'll

17 have a conference so I can tell you where we stand.  I'll

18 inform you of that date later.

19         MR. SUTTON: Thank you.

20         MR. BURTON: Thank you.

21         MR. GOLDEN: I apologize again, Your Honor.

22         MR. BURTON: Your Honor, let me thank the court again

23 for the accommodation in rescheduling this hearing.  We much

24 appreciate it.

25         THE COURT: All right.  We are adjourned.  Thank you.

20

1                          * * * * *

2          I certify that the foregoing is a court transcript from

3    an electronic sound recording of the proceedings in the above-

4    entitled matter.

5

6    _____

7                          Shari Riemer, CET-805

8    Dated:  May 19, 2015

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25